NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0582n.06
Filed: August 13, 2007

No. 06-5719

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| FRANCIS B. LYNCH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| RANDY SEASE and BRENDA WALTZ, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: DAUGHTREY and GIBBONS, Circuit Judges; and SCHWARZER, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Counterdefendant-appellant Francis B. Lynch appeals the district court's denial of his renewed motion for judgment as a matter of law after a jury found in favor of counterplaintiffs-appellees Randy Sease and Brenda Waltz on their claim of promissory estoppel under South Carolina law. For the following reasons, we reverse the judgment of the district court.

I.

In late 1991 or early 1992, Lynch engaged Sease and Waltz for assistance with arranging financing for his acquisition of Somerset Oil. Lynch orally agreed to pay Sease and Waltz a $1.5 million "finder's fee" if they were able to find a provider of approximately $15 million in financing

_____

[*]The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

-1-

for the acquisition. Sease and Waltz devoted significant efforts toward securing financing, including developing a business *pro forma* and contacting potential sources of funds. The parties reduced their agreement to writing in a contract dated February 27, 1995. Among other things, the contract required that Lynch "disclose any information, verifications, warranty and/or any statement that [the provider of funds] may need in order to properly comply and/or execute the approval of financing for the acquisition," "meet directly with the [provider of funds] and/or its agent to discuss and/or implement any procedures needed by [the provider of funds] in an expedient manner," and "pay [Sease and Waltz] a finder's fee for an amount of . . . [$1.5 million] . . . when the financing or loan is approved and closed by [Lynch]." In exchange, Sease and Waltz agreed to introduce Lynch to a provider of funds they had located, PNC Bank. Sease and Waltz understood the contract to provide them with the exclusive right to pursue funding for the acquisition of Somerset Oil.

Lynch told Sease that "things were going well with PNC Bank." In August 1995, Lynch told Sease and Waltz that he needed to travel to Kentucky to close the loan with PNC Bank, borrowing Waltz's car for the trip. Several days later, Lynch told Sease and Waltz that the owner of Somerset Oil was no longer interested in selling and had removed it from the market. As a result, Sease and Waltz terminated their efforts to obtain financing for the acquisition. Sease and Waltz allege that Lynch did not travel to Kentucky to close the loan but rather traveled to Atlanta to meet with the Environmental Protection Agency regarding environmental issues related to Somerset Oil. Furthermore, the owner of Somerset Oil testified that he never removed it from the market. In 1999, Lynch purchased Somerset Oil for $5.9 million using financing from CIT Bank arranged by Glacier Capital. Glacier Capital was paid a commission of $157,000.

When Sease learned that Lynch had purchased Somerset Oil, he hired an attorney to demand

that Lynch pay the commission required by the contract. Lynch filed a declaratory judgment action against Sease and Waltz seeking a declaration that they were not entitled to a finder's fee. Sease and Waltz filed counterclaims for breach of contract, fraud, and promissory estoppel. Following discovery, Lynch moved for summary judgment on the ground that the contract was void. The motion was denied. At trial, after the close of Sease and Waltz's proof, Lynch made a motion for judgment as a matter of law, on which the court reserved ruling. At the end of all proof, Lynch renewed his motion for judgment as a matter of law, which the court denied. The jury returned a verdict in which they found that Sease and Waltz had an agreement with Lynch to provide funding opportunities and that Lynch breached the agreement. The jury found that the breach of contract resulted in no damages. The jury further found that Lynch had perpetrated a fraud upon Sease and Waltz by his conduct but found that the fraudulent conduct caused no damages. Finally, the jury found that Sease and Lynch had detrimentally relied upon a promise made by Lynch and that this reliance caused damages of $100,000 to Sease and $50,000 to Waltz. Following the verdict, Lynch moved for judgment as a matter of law on the issue of promissory estoppel, which the court denied. The court entered a judgment consistent with the jury's findings. Lynch filed a timely notice of appeal, seeking review of the judgment and the denial of his motion for judgment as a matter of law.

II.

A district court's denial of judgment as a matter of law pursuant to Rule 50 is reviewed *de novo* for legal determinations. *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). "The inquiry for resolving a motion for judgment as a matter of law pursuant to Rule 50 is the same as the inquiry for resolving a motion for summary judgment pursuant to Rule 56"; therefore, "[w]e review all of the evidence in the record in the light most favorable to the nonmoving

party and determine whether there was a genuine issue of material fact for the jury." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 794 (6th Cir. 2004) (*en banc*). In diversity cases, questions of evidence sufficiency are reviewed under the standard of the forum state. *K&T Enters.*, 97 F.3d at 176. The standard of review for questions of evidence sufficiency under South Carolina law, which the parties agree applies, is that an "appellate court will reverse the trial court's ruling on a [renewed judgment as a matter of law] motion only where there is no evidence to support the ruling." *Burns v. Universal Health Servs., Inc.*, 603 S.E.2d 605, 611 (S.C. Ct. App. 2004). However, because the doctrine of promissory estoppel is equitable in nature, the reviewing "court can find facts in accordance with its view of the preponderance of the evidence." *West v. Newberry Elec. Coop.*, 593 S.E.2d 500, 502 (S.C. Ct. App. 2004); *see also Rushing v. McKinney*, 633 S.E.2d 917, 922 (S.C. Ct. App. 2006).

III.

In South Carolina, promissory estoppel "may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice." *Higgins Constr. Co., Inc. v. S. Bell Tel. & Tel. Co.*, 281 S.E.2d 469, 470 (S.C. 1981) (quoting 28 Am. Jur. 2d *Estoppel and Waiver* § 48 (1966)) (internal quotation marks omitted). To establish a claim of promissory estoppel, one must prove: "(1) the presence of an unambiguous promise; (2) the promisee reasonably relied upon the promise; (3) the reliance was expected and foreseeable by promisor; and (4) the promisee was injured as a result of reliance upon the promise." *Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 67 (S.C. 2005).

"A contract and promissory estoppel are two different creatures of the law; they are not

legally synonymous; the birth of one does not spawn the other." *Duke Power Co. v. S.C. Pub. Serv. Comm'n*, 326 S.E.2d 395, 406 (S.C. 1985). Therefore, a plaintiff can pursue contract and promissory estoppel claims in the alternative,[1] *see U.S. Fid. & Guar. Co. v. S.B. Phillips Co., Inc.*, 359 F. Supp. 2d 189, 208 (D. Conn. 2005) (applying South Carolina law), and a denial of relief on a promissory estoppel claim does not preclude relief under a contract theory, *see Link v. Sch. Dist. of Pickens County*, 393 S.E.2d 176, 179 (S.C. 1990). However, the two legal theories are related because "promissory estoppel is viewed as a substitute for, or an equivalent of, [the] consideration" required for a contract. *Duke Power Co.*, 326 S.E.2d at 406 (citing 28 Am. Jur. 2d *Estoppel and Waiver* § 48 (1966)).

Promissory estoppel requires a promise without consideration. *Higgins Constr. Co.*, 281 S.E.2d at 470. By definition, a promise is a representation as to future intent, not a past or present fact. *See* 28 Am. Jur. 2d *Estoppel and Waiver* § 48 (1966) (noting that promissory estoppel is "predicated on promises or assurances as to future conduct"); *see also* Restatement (Second) of Contracts § 2 (1981) ("A promise is a manifestation of intention to act or refrain from acting in a specified way . . . ."). "'Promissory estoppel comes into play in situations where actual consideration is not present,' and is thus 'inapplicable in situations where a contract exists since a necessary element of a valid contract is consideration.'" *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1217 (D.S.C. 1992) (quoting *Glover v. Lockheed Corp.*, 772 F. Supp. 898, 907 (D.S.C. 1991)). Therefore, although contract and promissory estoppel claims may be pled in the alternative, a plaintiff cannot recover under both theories for the same promise. *See* 28 Am. Jur. 2d *Estoppel and*

---

[1]For this reason, the district court correctly dismissed Lynch's argument that the existence of a merger clause in the written agreement foreclosed a promissory estoppel claim.

*Waiver* § 57 (2000) ("Once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties, and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel."). If a valid, enforceable contract exists between the parties as to a certain issue, their rights and obligations are governed solely by the contract terms. *See Charleston County Sch. Dist. v. Laidlaw Transit, Inc.*, 559 S.E.2d 362, 364 (S.C. Ct. App. 2001) (dismissing promissory estoppel counterclaim because counterplaintiff admitted a contract that specifically governed the issue); *see also Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599 (4th Cir. 2004) ("[I]n South Carolina, equitable relief is precluded under a theory of promissory estoppel if the estoppel claim is in direct conflict with a specific contract term."); 28 Am. Jur. 2d *Estoppel and Waiver* § 57 (2000) ("[P]romissory estoppel is not available when an unambiguous contract exists that covers the issue for which damages are sought.").

In this case, Sease and Waltz have not presented any evidence of a promise without consideration as required for a claim of promissory estoppel. The district court noted two potential promises offered into evidence. First, "the jury could have reasonably concluded that Lynch promised he would meet with PNC Bank and provide it with the information needed to obtain funds for the purchase of Somerset Oil." However, this promise was explicitly provided for by the terms of the contract that the jury found enforceable between the parties. As such, this promise was made with consideration and cannot support a claim for promissory estoppel. Second, "Sease and Waltz claimed that they relied on Lynch's statement that the company was no longer for sale." However, this statement by Lynch cannot support a claim for promissory estoppel because it is not a promise but a representation as to present fact. In the absence of any evidence of a promise without

-6-

consideration, Lynch was entitled to judgment as a matter of law with regard to his promissory estoppel claim.

Promissory estoppel is an equitable doctrine, *West*, 593 S.E.2d at 502 (citing 28 Am. Jur. 2d *Estoppel and Waiver* §§ 1, 55 (2000)), which is only applicable if a fraud or some other injustice would result. *Citizens Bank v. Gregory's Warehouse, Inc.*, 375 S.E.2d 316, 318 (S.C. Ct. App. 1988); *see also Higgins Constr. Co.*, 281 S.E.2d at 470. In this case there is no need for the equitable doctrine of promissory estoppel because Sease and Waltz have other remedies that make them whole. Although the two alleged promises cannot support a claim of promissory estoppel, they provide a basis for the breach of contract and fraud claims brought by Sease and Waltz. Lynch's alleged failure to meet with PNC Bank and provide it with the information needed to obtain funds could constitute a breach of contract, which the jury found. Lynch's alleged misrepresentation that the company was no longer for sale could constitute the fraudulent conduct, which the jury also found. Because the claims for breach of contract and fraud provide remedies for Lynch's alleged misconduct, promissory estoppel is not applicable.[2]

IV.

For the foregoing reasons, we reverse the district court's denial of Lynch's motion for judgment as a matter of law and remand for entry of judgment consistent with this opinion.

---

[2]The existence of these remedies is sufficient to make promissory estoppel inapplicable, despite the fact that the jury clearly found that Sease and Waltz suffered no damages from Lynch's breach of contract and fraud.